## No. 6923.

SEVIN & GOURDAIN, IN LIQUIDATION, vs. THÉOGÈNE CAILLOUET.

There can be no valid pledge of a mortgage, or vendor's privilege, by mere agreement of parties to that effect, unaccompanied by an actual or symbolical delivery of possession.

Amendments of pleading will not be allowed during the trial of a case, when they will delay the trial, and change the issues.

Open accounts of merchants and factors for supplies furnished, and money advanced, are prescribed in three years.

APPEAL from the Fifteenth Judicial District Court, parish of Lafourche. *Beattie, J.*

*Lewis Guion* and *E. W. Blake* for plaintiff and appellants.

*J. D. Moore* and *Thomas A. Badeau* for defendant and appellant.

The opinion of the court was delivered by

EGAN, J. The plaintiffs were commission merchants in the city of New Orleans. The defendant resided in the parish of Lafourche, where

he was engaged in the year 1871 in planting, in partnership with J. K. Gourdain, a member of plaintiffs' firm at the time. It appears that the defendant had been furnishing the money used by his partnership, but that in the month of May it became necessary to arrange for advances of money and supplies for the year; that Gourdain was unable to furnish them, and that an arrangement was made by which his New Orleans firm agreed to make the necessary advances; but in order to enable them to do so that Caillouet gave his draft on them to his own order and by him indorsed for five thousand five hundred dollars payable on the first of January, 1872, with eight per cent interest from maturity, and at the same time, to secure the same to plaintiffs or any holder, executed a public act by which he declared that he did "*pledge* and give as collateral security a certain conventional mortgage, with vendor's lien and privilege, resulting from the sale by him to other parties of a certain sugar plantation in the parish of Lafourche, by act passed before J. K. Gourdain, the parish recorder, in January, 1860."

This draft was taken by the plaintiffs' firm, as was customary among commission merchants, with a view to its negotiation or use as a pledge or collateral security, in order to raise money with which to make the advances stipulated for. It was accepted and so used by them, and at its maturity, as they allege, was paid. They allege that the defendant became indebted to them "for moneys due and advanced during the year 1871," for the plantation worked by him and his partner, Gourdain, in the sum of six thousand three hundred and seventy-eight dollars and sixty-one cents, with eight per cent interest per annum thereon from the dates set forth and fully detailed in an account current accompanying this petition, "and that the before mentioned" draft and "pledge" were "executed *to guarantee*" the payment of this indebtedness. They ask for judgment for the full amount of their account, and for the sale of the mortgage and vendor's privilege claimed to have been pledged to satisfy the said indebtedness to the amount for which the draft was given, besides interest and five per cent attorney's fees as stipulated in the act of pledge. Under this state of facts we regard the present action, and indeed the plaintiffs themselves so treated it, as on an account current, into which the draft passed, was merged so soon as it was taken up by the plaintiffs. It is evident that the act of pledge, as it is termed, was designed to secure the draft and to give it currency and credit for the purpose of its negotiation so as to raise money and thus enable the plaintiffs to make the proposed advances. The draft was so used, and at its maturity was paid according to its tenor by the plaintiffs, the acceptors. The draft thus became extinct and with it the pledge or security, if, indeed, it amounted to so much.

The defendant denied all the allegations of the plaintiffs except the

signature of the draft and the execution of the notarial act of pledge of the mortgage and vendor's lien (which we may here remark was not offered in evidence). denied specially receiving any advances from plaintiffs and any indebtedness to them on account of either the draft or act of pledge, the obligations of which were conditional, and the condition had not happened; and sets up against them error, fraud, and want and failure of consideration. He avers further that they were given for the accommodation of the plaintiffs, and to enable them to raise funds to be loaned by them to their copartner, Gourdain, to aid him in his planting; that it was distinctly understood that the plaintiffs would take up the draft at its maturity, and cancel and return it to defendant, by whom it was so loaned to them as an accommodation; that respondent was not to be considered or held bound in the same, and that plaintiffs had frequently assured him that the draft was so taken up and canceled and respondent discharged therefrom. He further denies the existence, in any event, of any legal or valid pawn or pledge of the conventional mortgage, by reason of its not being susceptible of pledge or pawn, and by reason of there having been no delivery of possession. Defendant sets up a reconventional demand for over twenty thousand dollars, for money loaned plaintiffs, and crops of sugar and molasses shipped to and sold by them and not accounted for, and prays judgment rejecting their demand, and in his own favor, for the amount claimed in reconvention.

The notarial act professing to create the pledge to secure the draft recites that both are given for moneys, supplies, and provisions *furnished and to be furnished* to carry on and cultivate, during the year 1871, the plantation cultivated by the defendant and his partner, Gourdain, and contained the usual obligation on the part of both the partners to ship to the plaintiffs all the crop of sugar and molasses made on the place that year. The act was signed both by Caillouet and Gourdain. Clay Knoblock swears that he was present when the draft and notarial act of pledge were executed, and he is positive that they were given either for the accommodation of the plaintiffs, or of one of the partners of the firm, Gourdain; that he acted as the friend of both parties in this transaction and knew that Caillouet had furnished the money used so far to run the place; and that Gourdain often acknowledged that he was indebted to his commercial firm in the sum of about seven thousand dollars, of which the amount of this draft formed a part; and that he was, besides, indebted to his partner, Caillouet, to at least twenty-five hundred dollars, and was unable to pay him; another witness swears that Gourdain told him this was his debt; and the son of defendant swears that Sevin told him that the amount ought to be charged to Gourdain, but that he could not change his books. This is denied by

Sevin, as is also the substance of the defense set up. A clerk of the plaintiffs swears to the correctness of the account, but says he only knows it is correct because it is so on the books of the firm. The amount of $1498 21 only appears from the account to have been charged to the Scudday plantation, that worked by Caillouet and Gourdain; while on the thirtieth of May, 1871, that amount was transferred to the account of Caillouet and Gourdain, with whom the account was kept by Sevin and Gourdain from that date.

There is no allegation or proof that Caillouet assumed the payment of that amount, or that he is otherwise liable in any event than as a planting partner, in which capacity he is not sued. The account was not annexed or alleged to be annexed to or made part of the petition, the allegation of which is, as we have seen, that " the defendant became indebted to plaintiffs for moneys due and advanced during the year 1871." The defendant's counsel asked that the plaintiffs be confined to the proof of cash advances, and the court so ordered. His counsel excepted to this ruling, and offered to amend the petition instanter, while the trial was going on, so as to make the allegation conform to the account, which included many other charges besides cash advanced. We think the court did not err in refusing the amendment under the circumstances and at the time it was asked. It was matter of substance, would have delayed the cause and changed the issues. We are not prepared to say that the plaintiffs should not have been restricted to the proof of cash advances only. In point of fact they were, however, allowed to introduce their account current, and proof of its correctness, besides proof of the other facts alleged by them in regard to the draft and act of pledge, as well as to negative the defendant's answer and demand, so far as their evidence would enable them to do so, as indeed they did in answer to interrogations on facts and articles propounded by defendant.

Their own account and the evidence *aliunde* show the reception of a large quantity of sugar and molasses, with the proceeds of which the account is credited. We think they have not sufficiently established, by a preponderance of evidence, the alleged indebtedness of defendant, Caillouet, to them, as it was incumbent upon them to do, while there is evidence in the record which would go far to make out a substantial defense as set up. The probabilities would seem to be that the present defendant is sought to be made liable for an indebtedness which, if it existed at all, existed against their own copartner, Gourdain, for whose accommodation the draft and act of pledge were executed; and that they ceased to exist or be of force against this defendant when the draft was taken up. At all events, whatever rights were conferred by that act,

Sevin & Gourdain vs. Caillouet.

in regard to the mortgage and vendor's privilege, their sale could not be decreed, as prayed for.

There was certainly no delivery of possession, no valid pledge (see 7 An. 221), and they, from their very nature, were themselves merely accessory to a principal obligation which they were intended to secure, and which was neither pledged nor transferred, even as collateral security. The account offered in evidence is not the individual account of the defendant, nor alleged nor proved to have been assumed by him. It is neither alleged upon as, nor proved to have been, an account stated or acknowledged. The suit is for moneys advanced and due during the year 1871, while the citation was only served upon the defendant on the thirtieth of December, 1876, a period nearly sufficient to prescribe even the draft, and of course more than sufficient to prescribe against an account for moneys advanced by and due to merchants. The prescription of three years is pleaded in this court. It is sustained by the evidence, independent of the other defenses set up, and we have not been asked to remand the cause on that issue. The district judge thought that the defendant was liable for $60 12½, as his half of the indebtedness of his planting firm, after allowing the credits shown in the account, and gave judgment accordingly. He further gave judgment of nonsuit as to that part of plaintiffs' demand for supplies and moneys advanced prior to January, 1871. The defendant asks that the judgment be amended so as to make it absolute against the plaintiffs. The credits on the face of the account and the evidence offered by the defendant were properly considered by the district judge in determining the question of the fact and amount of defendant's liability, but the reconventional demand does not seem to have been otherwise considered, nor is it passed upon by the judgment. No complaint is, however, made here on that score, and as to that feature of the case we think no injustice appears to have resulted; the items covered by it for sugar and molasses sold are the same credited in plaintiffs' account. The view we have taken of this case renders unnecessary the consideration of the various questions raised by other bills of exception in the record.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment of the court below be and it is avoided and reversed, that the defendant's plea cf prescription be sustained, and that plaintiffs' demand be rejected, with costs of both courts to be paid by them, with reservation, however, of any right the plaintiffs may have as to the other items of account than cash advances, as not in issue in this case.